```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - -X
CHINESE AUTOMOBILE DISTRIBUTORS OF
AMERICA LLC,

              Plaintiff,                  Opinion and Order

    - against -                           07 civ. 4113 (LLS)

MALCOLM BRICKLIN, JONATHAN BRICKLIN,
BARBARA BRICKLIN JONAS, MICHAEL JONAS,
SANIA TEYMENY, SCOTT GILDEA, and
VISIONARY VEHICLES LLC,

              Defendants.
- - - - - - - - - - - - - - - - - -X
```

The issues on this motion to disqualify plaintiff's counsel McCarter & English LLP because of its partner Howard M. Berkower's prior representation of defendant Visionary Vehicles LLC turn on two points: whether his work for Visionary was substantially related to the issues in this litigation (thus disqualifying him) and, if so, whether Mr. Berkower's disqualification is imputed to his partners and associates in the McCarter & English firm.

1.

Mr. Berkower joined McCarter & English as a partner on October 22, 2007, five months after it had commenced this litigation on behalf of plaintiff on May 25, 2007. Apparently he came directly from his former firm, Zukerman Gore & Brandeis LLP, where he had been the partner in charge of that firm's representation of defendant Visionary Vehicles LLC with respect to its efforts to raise $200 million in equity financing, as well as in general corporate matters.

As reflected in the retainer letter Mr. Berkower wrote on February 6, 2006, when he and the Zukerman firm were retained by Visionary:

> On behalf of Visionary Vehicles LLC ("VV"), you have asked my Firm, Zukerman Gore & Brandeis, LLP (the "Firm") to represent you in a $200 million institutional private equity financing and in general corporate matters (the "Engagement"). . . .
>
> . . .
>
> 1. <u>Professional Undertaking</u>.  I will have primary responsibility for the representation, and will use other attorneys and legal assistants in the office in the best exercise of my professional judgment.  In the event that there arise any questions regarding the staffing of any matters during the course of our Engagement, please contact me immediately.

Upon his retention, Mr. Berkower was asked to review and comment on Visionary's May 3, 2005 private placement memorandum. He did that during February of 2006, at about the times of plaintiff's agreements (February 6 and 17) to the two installments (paid on February 21 and March 17) of its $2 million investment in Visionary, which were made after its principals reviewed the same May 3, 2005 memorandum on which he was then working.  He made modifications to that 2005 memorandum, and represented Visionary in connection with its fund-raising activities.  In April and May of 2006 he provided additional comments with respect to the 2005 memorandum and performed other work relating to an abortive arrangement with George Soros for Mr. Soros's furnishing of $200 million in financing, which the complaint in this litigation alleges fell through when Malcolm Bricklin, Visionary's chairman and CEO, refused to cede control to Mr. Soros.  Mr. Berkower worked on a release in August 2006 when that proposed financing collapsed.

Mr. Bricklin states that he spoke more than ten times and met on more than five occasions with Mr. Berkower, who "was provided with extremely sensitive, privileged and confidential information regarding the financial details, corporate structure and fund raising activities" of Visionary (Bricklin's Sept. 2, 2008 Aff. ¶ 13).

From March through mid-May 2007 Mr. Berkower worked together with Visionary consultant Michael Jonas on converting Visionary from a limited liability company to a corporation. Mr. Jonas stated (his Aug. 26, 2008 Aff. ¶¶ 5, 7) that:

> Mr. Berkhower [sic] provided all of the legal services in connection with the transfer of assets and liabilities from Visionary Vehicles, LLC to Visionary Vehicles, Inc. (now known as VCars, LLC). As part of his participation, Mr. Berkhower was privy to the intimate details of the business enterprises, including, but not limited to; the Company's assets, liabilities, debts, creditors, employees and their compensation, expenses, business plans, marketing strategies, dealer contracts, dealer territories, equity funding, as well as the ongoing negotiations between the Company and potential dealers and investors. . . .  Mr. Berkhower reviewed detailed information regarding the Company as well as dealer development and other business information which was of a confidential and proprietary nature to VISIONARY VEHICLES, LLC.

Mr. Jonas states that he spoke with Mr. Berkower at least three dozen times, exchanged over 20 e-mails with him, that on August 19, 2008 there were over 500 e-mails from, to, or referring to Mr. Berkower, and that these communications were privileged, confidential and concerned sensitive nonpublic information.

Mr. Berkower is therefore disqualified from representing any interests adverse to Visionary's with respect to the above matters, under the familiar principles stated by the New York

Court of Appeals in <u>Kassis v. Teacher's Ins. and Annuity Association</u>, 93 N.Y.2d 611 (1999):

> Attorneys owe a continuing duty to former clients not to reveal confidences learned in the course of their professional relationship. It is this duty that provides the foundation for the well-established rule that a lawyer may not represent a client in a matter and thereafter represent another client with interests materially adverse to interests of the former client in the same or a substantially related matter. Indeed, such "side switching" clearly implicates the policies both of maintaining loyalty to the first client and of protecting that client's confidences.

<u>Id.</u> at 615-16 (citations omitted).

Because of the importance of protecting client confidences, and the difficulty of obtaining proof of breaches, to prevail on a motion to disqualify:

> . . . the former client need show no more than that the matters embraced within the pending suit wherein his former attorney appears on behalf of his adversary are substantially related to the matters or cause of action wherein the attorney previously represented him, the former client. The Court will assume that during the course of the former representation confidences were disclosed to the attorney bearing on the subject matter of the representation. It will not inquire into their nature and extent. Only in this manner can the lawyer's duty of absolute fidelity be enforced and the spirit of the rule relating to privileged communications be maintained.

<u>T.C. Theatre Corp. v. Warner Bros. Pictures</u>, 113 F. Supp. 265, 268-69 (S.D.N.Y. 1953)(Weinfeld, J.).

That rule, as stated by then-District Judge Leval,

> . . . is not designed merely to prevent the *disclosure* of confidences by the lawyer. It concerns itself as much with the lawyer's *use* of confidential information in a manner adverse to the interests of the former client that trusted the lawyer with its confidences. Adverse use of confidential information is not limited to disclosure. It includes knowing what to ask for in discovery, which witnesses to seek

- 4 -

>     to depose, what questions to ask them, what lines of
>     attack to abandon and what lines to pursue, what
>     settlements to accept and what offers to reject, and
>     innumerable other uses.  The rule concerns itself
>     with the unfair advantage that a lawyer can take of
>     his former client in using adversely to that client
>     information communicated in confidence in the course
>     of the representation.

Ullrich v. Hearst Corp., 809 F. Supp. 229, 235-36 (S.D.N.Y. 1992)(italics in original)(citations omitted).

In the present litigation plaintiff claims that Mr. Bricklin, on behalf of Visionary, obtained plaintiff's $2 million investment by misrepresenting that Visionary would obtain $200 million in financing, and that Bricklin would give up control if necessary to get that financing in place.  It also claims that Mr. Bricklin and the individual defendants were looting Visionary by, among other things:

>     (a) making large cash withdrawals for unsubstantiated
>     purposes, (b) using corporate funds for personal
>     travel and entertainment, (c) paying related parties'
>     unreasonable fees in connection with consulting
>     agreements, (d) making large expenditures for
>     "Wellness" absent appropriate corporate approval, (e)
>     claiming large expenditures as "promotional gifts"
>     without sufficient justification for such
>     expenditures, and (f) diverting ten percent of all
>     investments to an unrelated account . . . .

Verified Amend. Compl. ¶¶ 46(a)-(f).

It is clear that Berkower could not be allowed to assert such claims against his and the Zukerman firm's former client. The nature and subjects of his work for Visionary, his professional devotion to and responsibility to assist in its fund-raising activities, the extent and detail of the information on which he worked and to which he had access bar him from now undertaking or assisting in any such activity adverse to Visionary.

His personal belief that he has no knowledge of confidences relevant to this case is immaterial: his disqualification stems from the knowledge and detail of the confidential information which was open to and used by him with respect to Visionary's business, operations and fund-raising, which are attacked in the ways asserted by plaintiff in this case.

The McCarter firm argues that it would learn any confidential information possessed by Mr. Berkower through discovery and from Visionary's former senior executive Alan Himelfarb, whom the firm is defending against Visionary's lawsuit in the Supreme Court, New York County. In that suit Visionary alleges that Himelfarb, with the plaintiff in this case and others misappropriated Visionary's business opportunities. McCarter's argument has been consistently rejected as a matter of law. See Emle Indus., Inc. v. Patentex, Inc., 478 F.2d 562, 573-74 (2d Cir. 1973)(". . . the client's privilege in confidential information disclosed to his attorney 'is not nullified by the fact that the circumstances to be disclosed are part of a public record, or that there are other available sources for such information, or by the fact that the lawyer received the same information from other sources.'", quoting H. Drinker, Legal Ethics 135 (1953)); NCK Org. Ltd. v. Bregman, 542 F.2d 128, 133 (2d Cir. 1976)("Even if, as Randall asserted, all confidential information to which he as house counsel had access was independently known to Bregman from his own employment or from another source, ORG's privilege in this information as disclosed to its attorney Randall is not thereby nullified."); Gov't of India v. Cook Indus., Inc., 422 F. Supp. 1057, 1060 (S.D.N.Y. 1976) (". . . the presumption of access to confidences prevails even though the 'confidential' information may be publicly available."), aff'd, 569 F.2d 737 (2d Cir. 1978); Tiuman v. Canant, No. 92 Civ. 5813 (JFK), 1994 WL

198690, at *3 (S.D.N.Y. May 19, 1994)("Even if all confidential information to which Burstein had access was independently known by the plaintiffs, Canant's privilege in this information as disclosed to his attorney Burstein is not thereby nullified."); Defazio v. Wallis, 459 F. Supp. 2d 159, 166 (E.D.N.Y. 2006)(". . . 'the ethical obligation of a lawyer to guard the confidences and secrets of his client . . ., unlike the [attorney-client] privilege, exists without regard to the nature or source of the information or the fact that others share the knowledge.", quoting NCK Org., 542 F.2d at 133).

2.

McCarter & English argues that Mr. Berkower has not been involved in any way in representing plaintiff in this case, nor has he discussed[1] confidential information or the merits or issues in this case with McCarter & English.  He is a transactional lawyer working in the firm's New York office, while the trial team prosecuting this litigation is in its Stamford, Connecticut office, and an ethical wall has been erected by the firm barring any communications with respect to this case between Mr. Berkower and the members of that team.

McCarter attorney Charles T. Lee Esq., the leading partner in charge of this litigation for plaintiff, was informed of Mr. Berkower's prior representation of defendant Visionary before Berkower joined the firm.  Mr. Lee determined that there was no conflict of interest.  In January 2008, when they first learned of it, Visionary's counsel protested Berkower's joining

---

[1] See Papanicolaou v. Chase Manhattan Bank, N.A., 720 F. Supp. 1080, 1086 (S.D.N.Y. 1989)(". . . courts have held that the sworn word of an infected attorney or his or her allegedly uninfected colleague that there was no cross-pollination between them is not a satisfactory rebuttal . . ." (citing cases)).

McCarter.  Mr. Lee, although "satisfied that we do not have a conflict issue"[2] established an "ethical wall" in early February 2008 (Lee's Sept. 26, 2008 Decl. ¶¶ 17-20).  That was more than three months after Berkower had joined the McCarter firm.

The delay was too long.  "To prevent one lawyer's conflicts from being imputed to his firm, the firm must immediately, and effectively, screen that lawyer from any contact with any relevant cases, such that there can be no 'no doubts as to the sufficiency of these preventive measures.'"  Panebianco v. First Unum Life Ins. Co., No. 04 Civ. 9331 (JSR), 2005 WL 975835, at *3 (S.D.N.Y. Apr. 27, 2005).  The "screening measures must have been established from the first moment the conflicted attorney transferred to the firm or, at a minimum, when the firm received actual notice of the conflict."  Mitchell v. Metropolitan Life Ins. Co., Inc., No. 01 Civ. 2112 (WHP), 2002 WL 441194, at *9 (S.D.N.Y. Mar. 21, 2002); accord Papanicolaou v. Chase Manhattan Bank, N.A., 720 F. Supp. 1080, 1087 (S.D.N.Y. 1989)("This Court doubts whether any Chinese walls, which are meant to be preemptive, can ever function effectively when erected in response to a motion, and not prior to the arising of the conflict."); Marshall v. State of New York Div. of State Police, 952 F. Supp. 103, 111 (N.D.N.Y. 1997)(". . . a screening device implemented only after a disqualified lawyer has been with a firm will not provide adequate protection of confidences."); Restatement (Third) of the Law Governing Lawyers § 124 cmt. d(i) (2000)("The required screening measures must be imposed in the subsequent representation at the time the conflict is discovered or reasonably should have been discovered . . . .").

---

[2]   His Jan. 28, 2008 E-Mail to Visionary's counsel.

Thus, the disqualification of Mr. Berkower must be imputed to the McCarter firm.

3.

McCarter & English argues that the motion should be denied because of the claimed unreasonable delay in bringing it on. The motion was filed on September 2, 2008, almost nine months after Visionary's counsel learned in late January that Berkower had joined the firm.

There was no waiver. In the interim the parties were discussing settlement and awaiting the outcome of motions to dismiss the case. After those motions were granted with leave to replead, the case was closed until plaintiff on July 10 filed its amended complaint, promptly following which the initial version of the instant motion to disqualify the McCarter firm was filed.

In any event, the Second Circuit has stated that (except in extreme cases),

> . . . the court cannot act contrary to [the public] interest by permitting a party's delay in moving for disqualification to justify the continuance of a breach of the Code of Professional Responsibility. Accordingly, "the Court's duty and power to regulate the conduct of attorneys practicing before it, in accordance with the Canons, cannot be defeated by the laches of a private party or complainant."

Emle, 478 F.2d at 574 (three year delay did not bar motion to disqualify)(quoting and citing cases).

This litigation is still at an early stage. Formal discovery has not yet begun. None of the defendants has answered or moved against the amended complaint. The fruits of the McCarter firm's factual investigation, legal research, and other work on the case can be passed on to successor counsel.

CONCLUSION

Defendants' motion[*] (Docket No. 42) to disqualify the law firm of McCarter & English LLP from representing plaintiff in this lawsuit is granted.

So ordered.

Dated: New York, NY
       January 8, 2008

                                    _____
                                        Louis L. Stanton
                                            U.S.D.J.

---

[*] The motion is made by all of the defendants except Scott Gildea.

- 10 -